Our second case for this morning is United States against Moody. Ms. Jacobs. Good morning, your honors. May it please the court, Michelle Jacobs for the defendant Dandre Moody. The defendant's sentence should be vacated because under the very narrow definition of firearms trafficking in 2K2.1 of the sentencing guidelines, the record simply does not support the defendant sold two or more firearms to an individual knowing that that individual or having reason to know that that individual intended to use or dispose of the firearms unlawfully. I think the most important things to really focus on this morning is that the subjective nature of the inquiry on this reason to know prong of the definition. Could I ask you a factual question? The government in its brief, I'm looking just for example at page 8 under analysis, but they say it a few times, presents the facts as though the people to whom Mr. Moody sold the firearms were were people who had heard about the train burglary and they wanted to buy the stolen firearms. So I want to know where that or those, if you want to think of it as two facts, come from. I don't know. The only facts I think that are in this record about the recipients, the so-called recipients or who how these sales happened or who he knew or anything like that, came from the end of the change of plea when there was a discussion about bond, whether or not he was going to get out on bond or there should be a bond. And the question was what happened to the guns. Mr. Moody said he sold the firearms to people who knew, I think it was knew about, I don't have the transcript in front of me, but it was like knew about it, something like that. It's not clear that they knew what what Mr. Moody was saying is they knew they were stolen, knew of the gun or the train burglary or anything like that. But all of the actual facts come from that statement. Now, but I'm confused because in the hearing the judge drew on that because his whole point about this common-sense inference was people were calling you who heard about the heist and wanted to buy the guns from you. So was the judge referring to facts that weren't in the record at the sentencing hearing? And if so, why wasn't there an objection at that point? I don't, I don't, I don't know of any facts in the record anywhere, including in the pre-sentence report, that would indicate what the recipients knew. Here's what, here's I think what you're talking about. It's in Appendix 44. This is the bond discussion and the court's trying to get to the bottom of it. And the court says, all right, sold directly, people contacted you and you sold the guns, question mark, the people who heard about it. You know what I'm saying about it. And then they move off that. The court says, how long did it take you to sell all the guns? A couple of days. How much money did you make? But that, so you're saying that's, that the it there means something. Something. And maybe it is the burglary. And even assuming that. Could it be anything else than the burglary? The judge seems to have thought it was pretty obvious it was the burglary. Right. It could be just that he had the guns for sale. But again, I just don't think that that's clear one way or another. But let's say it is the burglary. That still is not evidence that Mr. Moody, and this is what has to be shown, that Mr. Moody knows or has reason to know what the recipients intend to do with the firearms. Or quite frankly, that there are two or more firearms sold to any one individual. Neither of those. But whether they're prohibited people or whether they have a prohibited use in mind. Exactly. And prohibited person actually is really narrow as well. It's not felon. Under this guideline, I mean, the court never even went there. Again, I think because nobody had identified any of the recipients. So there's no way to tell whether those recipients, recipient or recipients, were prohibited. But if they were, it had to be with drug or violent crime felony convictions. Again, there's just no evidence of that. I understand, I think, why the court sort of made the sweeping assumption that it did. You know, there is a gun problem in Chicago. There is a violence problem in Chicago. There's no doubt. And I'm not here to, in any way, sort of push that aside or denigrate that. The conduct is dangerous. I mean, again, I'm not I'm not here to say that that's not the case. But that's also not the question that has to be answered. And here it has to be, what did Mr. Moody know or have reason to know about these recipients? And there's just nothing in that record. And that's why we relied on the Green case, which was the case that the defendant had purchased firearms, five pistols in Texas, smuggled them into Mexico, and gave them to her common-law spouse and another person. And the district court in that case made the assumption that people in Mexico who want guns like this, who have been smuggled, must essentially, they're using them for drug trafficking. That was kind of the sweeping, we have this drug trafficking problem in Mexico, why else would somebody do this? And the court reversed. Because again, the question was, what does that defendant know about the gun? And the only way this could happen is if the government could show that he knew that someone who called was planning to use the gun, you know, that they had a conversation or something like that. His knowing that whether people heard that the guns were stolen or not, that they know that he had that he has some guns, they're not interested in going through the permitting process, and he just, you know, is, you know, deliberately ignorant and asks no questions about people just calling, hey, I hear you have some guns, I'd like to buy a gun. Well, in some ways, I guess I'll say yes. Well, that's one problem, right? The other is that he knows that they are either drug traffickers or violent criminals. Exactly, exactly. But as to that question, I think there's a lot of circumstantial ways, and there's lots and lots of cases that circumstantially a court could say, this defendant had reason to know. There's a discussion about obliterating serial numbers. There was a there's a case that's cited in the briefs where the, it's an undercover agent, says I'm going to run this money through a tattoo parlor to legit the money or something like that. He doesn't know for sure what the undercover is saying he's going to do with it, but the circumstances surrounding the sale certainly suggest something illegal. There are cases that, again, that are cited in the briefs where the guns are exchanged along with drugs. If there was any evidence, in this case, there were defendants, Walker and Lewis, where the testimony was that the sale to a Driggers, Nathan Driggers, they sold 30 guns to him. They knew he was a fence. They knew he was a felon. As a fence, he's likely to intend to sell the firearms. Again, it may not be with certainty that they know that, but the circumstances surrounding those sales, and there was testimony. They said there were phone records, cell site records, evidence. Evidence that the defendant, and again, it's a subjective inquiry. It's not would we as reasonable people do this, or we as reasonable people think X, Y, or Z. It is this defendant, and what did he have reason to know? And unfortunately, I mean, quite frankly, unfortunately for the government, they just didn't have that evidence as to Moody. They had it as to other defendants because they had the circumstances of those sales. Are you disputing this point that Judge Wood was asking about? Are you disputing this evidence that the people who called, because that's a pretty important piece of evidence, right? That the people who called him wanting to buy the guns knew that they were stolen from this train? I don't think that there's evidence in the record to support that. No, I don't. You find this, of course, I'll ask the government about whether they've got anything else to... I don't think that there's evidence in the record, but I also don't think that the mere fact of purchasing a stolen firearm, even if a recipient, even if there were evidence that a recipient knew that a firearm was stolen, that alone, I would submit, is not sufficient to establish that that recipient has the intent to do something more unlawful with the firearm. For, again, just for example, we gave the example of Lori Shelton in this case, who purchased several of the firearms that had been stolen off this train car. She was a postal worker, single mom, lived in a dangerous neighborhood, and the guns were found in her closet. There's no evidence that Lori Shelton was about to deal with gang violence or something like that. And even some of the examples that the government uses in their sentencing memo, you know, a concerned citizen located one of the guns, I believe it was in a garbage can, or somebody who was arrested said, I know that one of the guns is in a garbage can. Okay, I mean, what does that say about the recipient? And more importantly, what is the intent? Okay, you're going to have to stop now. I'll give you a little bit to rebut, and when you do rebut, I want you to explain how the plain error standard is going to affect all of this. Thank you. Thank you. Mr. Parente. May it please the court, my name is Chris Parente, and I represent the United States. Judge, I'll turn to your first point of where that comes from. Right, my first problem is, you know, I highlighted this as I was reading the briefs, like different people who heard about it, you know what I'm saying about it. And I'm having a lot of trouble translating that into the first sentence in your brief under Part C, unknown individuals who heard about the train burglary and wanted to buy stolen firearms. For all I know, people who wanted to buy stolen firearms wanted to get a gun on the cheap, you know, and like Ms. Shelton, put it in their closet. They may not have been prohibited persons, and they may not have had any prohibited use in mind. Well, first, Judge, let me go to the language that was used by the defendant. Both the government and the court were operating under the assumption, based on what Mr. Moody said to the court about where these guns ended up, that these are people who heard about the train robbery. But where did you get that from? I'm scouring this transcript. Judge, you quoted it exactly correct. I know, it's right here. This is in the context of a defendant who wants to remain out on bond, pending sentencing. And the court says, we need to know where these guns went. Right, so we go to the previous page, and the judge says, during that, what, three-month period of time, you disposed of all the guns. He says, yes. You don't know where they are now? Yes. The judge says, would you tell the judge what you did with the guns? And he says, I had sold them to different people who asked about them. Like, for example, like Peebles, who said someone probably wanted to buy one. What I'm not finding there is anything tying any of these recipients to the train burglary. You know, it just... No, not the recipients, right, no. But if you go to the next page, the court then said to the defendant, people contacted you, and you sold the guns. Question. Right, like different people who heard about it. You know what I'm saying? About it. How long did it take? But what, though, about that you have guns for sale, or about the train, how do you disambiguate that? I think you have to look at the context we're talking about. I am looking at the context we're talking about. I know what the case is about. The defendant's telling the court that he sold all these guns within a couple of days, so you have to look at the timing of this. He's telling the court, right, different people who heard about it, you know what I'm saying, about it, that then called him. But what's it? Does it mean I have guns for sale, or does it mean I was part of this crew of people who went down and robbed a train, etc., etc.? I mean, you may be confident in your own mind what this man was saying, but I'm looking at a cold transcript, and the pages around it, the pages after it, I'm not finding in the context of it. It's just he sold them quickly. If it got, if word got around, hey, you know, Moody's got guns for sale. Guns are stolen all over Chicago every day. You know, how come it's these guns? Judge, I can, I can just tell the court that the government took from what Mr. Moody was saying, what the court took from what Mr. Moody was saying, that these were people who heard about the train robbery. So was that a jump in logic that was unsupported by evidence? You're just speculating. Judge, I would say that, one, that, that's the inference, it's a fair inference the government made. The government premised its sentencing memo on this. The defense counsel filed a sentencing memo, never objected to the interpretation of the court or, or the government. And at the sentencing hearing, the court made it clear that that's what, what he, what he found. And again, the defense counsel never made any argument to the contrary that, no, no, no, when he said he heard about it, he meant... Well, now you're making a plain error point. I honestly cannot extract from this transcript what you're saying. If it was an objection that should have been made that wasn't made, then we may have a forfeiture problem. No, Judge, what, what the government's position is, that the, the quote that when the court said, people contacted you and you sold the guns, and the defendant responded, right, like different people who heard about it, and you know what I'm saying about it, that he meant the train robbery. I know that's what you think, and I'm telling you that I don't agree with you. But if, so, so I'm at the even if you're wrong stage. I recognize that's your starting argument, that it's there, that it somehow means what you say it means. If it's ambiguous and there's no evidence in the record, then if it was clear in your sentencing memo that that was your understanding it, and no one was objecting, then that's a different question. You know, do they forfeit an otherwise valid point by failing to object? Absolutely. I think there's a strong, not a forfeiture, I think there's, and we've argued that. I know you're arguing waiver, but that So did you have it in the sentencing memo? Yes, absolutely. So you said expressly in the sentencing memo that people who called to buy these guns knew that they were stolen from the train? Yes, your honor, numerous times. Okay. And that was the government's argument as well, because it goes to the dangerousness of the crime. These are people who were in the market for stolen guns, and the only people in the market for stolen guns are typically people who can't go to a store and buy a gun. But there are people who do all sorts of bad things with guns, yet of course they're the ones who either can't or won't go to a store. But again, you look at what the district court said. There is absolutely no question that the people that were seeking to buy those firearms wanted those firearms to support other unlawful activity beyond their unlawful possession of firearms. Where does that come from? There's no evidence. Well, the district court's allowed to make common sense inferences based on the circumstances surrounding them. Not on the central question. You can't just sort of speculate your way into the factual issue you're trying to find. Where's the evidence underlying that other than this if statement? Was it in the PSR? Regarding what, your honor? The fact that people had heard about the train. Is your sentencing memorandum the only place where this was explicitly stated? My sentencing memorandum and the judge's comment at sentencing. Okay, but as Judge Wood has pointed out, the judge's comment at sentencing is ambiguous. So we're trying to figure out if there's any place where it was expressly stated or where the fact was expressly found that any of the people who called Moody had heard about the train robbery. No, it would just be the government sentencing memo and the interpretation of the defendant's own statement. Okay, and there was no objection made? Correct. Okay. And Judge, it's not just the inference. The government put in the example of where stolen guns in Chicago go. But we don't even know if these are the guns that Moody was selling. There were quite a few guns taken off that train. Absolutely. And Moody only sold 13 of them. So we have no idea whether the guns that you found elsewhere in Chicago were the Moody 13 or whether they were the somebody else, you know, 100. Correct, but it certainly gave the court an education on where stolen guns. Oh, the court knew that stolen guns wind up all the place in Chicago. I can't believe an experienced judge like Judge Tharp was under any illusion about that. Right. So the question is, right, under the guideline, and Judge Barrett made this point earlier, it's not just actual knowledge. We don't have to prove actual knowledge. That would be very difficult short of a statement by the defendant. That's why the guideline says you had reason to believe. That's why you need circumstantial evidence of the reason to believe, and that's where this record is painfully thin. Judge, then let's turn to the waiver argument, because the reason it's thin, in part, is because he never objected to this. So the court didn't even need to hear a dispute because he agreed that it applied. That's the problem. So he basically concedes, okay, go ahead and enhance my sentence on this basis. He does, Judge, and you have to look at the timing of this plea. But he objected to the enhancement. He didn't object to the enhancement at all. That's the point. And I argued, Judge, that he made an intentional decision not to do that because he was the fifth defendant to be sentenced. The court had already imposed this same enhancement four times previously. There's some strategy to a defendant, the last one to be sentenced here, to come in and say, I accept full responsibility. I'm not going to dispute these enhancements. Give me a below-guideline sentence, and Judge Tharp did. He gave him a below-guideline sentence. The defendant can't claim this was a mistake. He had four clear blueprints about how to object to this exact enhancement because the four sentencing memorandums of the co-defendants were already filed before him. So I think this is a very strong waiver case, Judge, because he made an intentional decision to not object to this. And let's be clear all the times he was on notice for this. It was in the government's version that the trafficking enhancement applied. The PSR stated the trafficking enhancement applies. The government sentencing memo is essentially a trafficking argument. And then the court went over the trafficking enhancement two times at the sentencing, and each time asked the defendant if he objected, and he said no. This was a conscious decision by a defendant who was the last of a series of defendants to be sentenced who made a decision not to object to this. And the benefit he got out of it because we won't imply an intentional waiver of something unless there was something that the defendant got out of it. And your argument is that it's acceptance of responsibility and a below-guideline sentence. Absolutely. And if you read the defendant's argument to the court, that's what he's arguing. He's saying, look, this guy is unlike the other guys. He's never really done anything like this before. He's accepting full responsibility. Give him a below-guideline sentence. And Judge Stark did. So there was value in not litigating these enhancements. So in the Fuentes case from the Seventh Circuit, your Honor said, we do not believe that repeated affirmations can be considered negligent oversights that might qualify as forfeiture. We are persuaded that the defendant intentionally relinquished the right to challenge the guidelines range, particularly in light of his numerous affirmative statements of agreement with the enhancement in the calculation. And I think that's what you have here, where the defendant at sentencing was asked immediately before the sentencing, do you have any objections? No. Okay. And then after the judge said, I'm applying the trafficking enhancement, do you object? No. He had numerous opportunities to do this and he didn't. So we would argue, Judge, regardless of all the other arguments, that he's waived this. Okay. Thank you very much. And I said I would give you another minute, so you may have your minute. This was not waiver. There is nothing in the pre-sentence report that discusses this trafficking enhancement relative to the subject of inquiry. There's no discussion here. And quite frankly, there is absolutely no benefit that this defendant receives in conceding a four-level trafficking enhancement. He's going to get acceptance responsibility. He can stand entirely quiet. He can object, ask that the government be put to its burden, and still get acceptance of responsibility. There is no benefit whatsoever that I can find in this record that would suggest that he... So it's forfeiture? It is a forfeiture. It is plain error. I mean, we argued that in our brief. There wasn't an objection. It is a plain error standard. But this court has indicated that when there is an incorrect application of the guidelines like this, it should be corrected. And so... Did he get a lower sentence than the other defendants who had gone immediately before him? You know, I don't recall in the order that they were sentenced whether his was higher or lower. I'd have to go back and look. But I can say, remember, the defendant... He may be the fifth defendant that was in line for sentencing. He's not present at each and every of these sentencings. And the evidence was different. Walker and Lewis, there was evidence about their sales. There was evidence about their recipients. And there was evidence about what they knew the recipients were going to do with those guns. There's nothing here. No evidence at all as to Mr. Moody's knowledge. And that's the question. Okay. Thank you very much. Thanks as well to the government. We'll take the case under advisement.